## GARFIELD et al. v. WESTERN ELECTRIC CO., Inc., et al.

(District Court, S. D. New York. May 26, 1924.)

**1. Patents ⊚⇒114—Inventor, who has assigned application, cannot maintain suit to obtain patent.**

Inventor, who has assigned his application to one who refuses to join as a party, cannot maintain a suit, under Rev. St. §§ 4895, 4915 (Comp. St. §§ 9439, 9460), though his fame as an inventor is involved.

**2. Patents ⊚⇒95—Assignment of application for patent divests inventor of his rights.**

Assignment of application for patent as effectively divests inventor of his right as though invention were a chattel.

In Equity. Suit by James R. Garfield and another against the Western Electric Company, Inc., and another. On plaintiffs' motion to amend bill by changing the name of plaintiff assignee, and to join such assignee as plaintiff or defendant, and on defendants' motions to amend and to dismiss the bill. Plaintiffs' motion denied, and defendants' motions granted.

Motions in a suit under Rev. St. § 4915 (Comp. St. § 9460), to procure the issuance of a patent. The plaintiffs are the alleged inventor and his assignee; the defendants, the applicant for another patent, who had been in successful interference with the plaintiffs', and that applicant's assignee. The defendant assignee moves to amend its answer by alleging that after suit brought the plaintiff assignee conveyed his rights to a third person, who is not a party and will not join. It also moves to dismiss upon the uncontroverted documentary evidence of these facts. The plaintiff assignor moves to amend the bill by changing the name of the plaintiff assignee to "the assignee of record of the Clement application," and to join such assignee as plaintiff or defendant.

William G. McKnight, of New York City, for plaintiff assignor.

George F. Scull, of New York City, for defendant assignee.

LEARNED HAND, District Judge (after stating the facts as above). [1] It is curious to me that any doubt should ever have arisen in a case like this. An inventor files his application in the Patent Office, and is eventually beaten in an interference with another applicant. At some time after filing, he assigns his application to another, and they together file a suit under section 4915. Pendente lite, the assignee in turn assigns to a third party, who declines to prosecute the suit, having composed his differences with the defendants. The inventor, thus left alone, insists upon prosecuting what amounts to a further appeal from the last decision in the Patent Office proceedings. Gandy v. Marble, 122 U. S. 432, 7 Sup. Ct. 1290, 30 L. Ed. 1223. It would seem on principle too obvious for argument that in such a situation the only person who had any interest in the prosecution was now absent from the suit, and that the defendants could not be compelled to litigate their rights at the insistence of one, who for reasons good enough to himself had parted with all his rights in the property at issue.

Nevertheless, the opposite was certainly ruled in Wende v. Horine (C. C.) 191 Fed. 620; the notion being that, under Rev. St. § 4915 (Comp. St. § 9460), the right was given to the "applicant," and that

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"applicant" does not include "assignee." Judge Kohlsaat thought this strict interpretation confirmed by section 4895 (Comp. St. § 9439), which required the application in cases of assignment to be made by the inventor. It is true that section 4895 says that the application must in such cases "be made and the specification sworn to by the inventor," but that is very far from saying that it may be made by the inventor alone. The purpose of the provision was clear, although the inventor's right to have and enjoy any patent had passed from him, still the question whether any patent should issue at all was still undecided, and depended upon what the inventor had invented. His oath was necessary since he alone had knowledge of the facts. I agree that the purpose was not so clear in having him make the application, in so far as that may be thought to be independent of the specifications proper. Indeed the section is somewhat ambiguous:

"In all cases of an application by an assignee, * * * the application shall be made * * * by the inventor."

However, even as respects this feature, it may have been thought necessary that so important a step as the filing of the application should be taken by the inventor, that being in effect a reduction to practice of the invention.

[2] Any such speculation is, however, quite beside the point here at issue, since it does not in the least follow, because it was necessary for the inventor to make the application, that he could prosecute it, if the assignee was unwilling. Any such right was hostile to his assignment, for it prevented the assignee from selling in turn to another, who wished to prevent the issuance of a patent, as in the case at bar. Since an assignment as effectively divests the inventor of his rights as though the invention were a chattel, he is bound to leave the assignee free to deal with the invention as he wills. To suppose that he can compel him to insist upon its passing into a patent is to deny the effectiveness of the assignment.

Wende v. Horine, supra, is the only case which so holds. Smith v. Thompson (C. C.) 177 Fed. 721, was directly to the contrary, though perhaps it was wrongly decided, because it would seem as though the inventor had the right to compel the assignee to allow him to prosecute or to pay him $2,500, which was the balance due him if a patent issued.

In Thoma v. Perri (D. C.) 205 Fed. 632, Judge Dodge first held no more than that the inventor of the interfering patent, who had assigned, was a proper party defendant to a suit under section 4915. His remark, based upon a dictum of Judge Lacombe in Elliott-Fisher v. Underwood Co. (C. C.) 176 Fed. 372, that the Patent Office might at discretion issue the patent to either the inventor or the assignee, was in my judgment erroneous. I can see nothing in section 4895 to justify any such discretion, and it would be a clear denial of the assignee's rights granted by the first sentence of that very section.

On the rehearing Judge Dodge went a little further arguendo, and said that the inventor was the only indispensable party defendant. Again I cannot agree. Is the assignee to be concluded by a suit against his assignor alone, who has parted with all interest in the property? On what theory should his rights be so at the mercy of his predecessor

in title? What assurance has he that such a one will be any longer concerned to defend a title which has ceased to have any but an honorific interest for him?

In Colman v. American, etc., Co. (D. C.) 235 Fed. 531, Judge Dodge decided no more than that an assignee alone might not file such a bill as this, by way of counterclaim to an infringement suit. He went somewhat further in his comments, citing without disapproval Wende v. Horine, supra; but it is clear that he was in some doubt whether an assignee might not file an original bill alone. Mr. Justice Nelson held that an assignee might do so under section 16 of the original Act of July 4, 1836 (5 Stat. 123). Gay v. Cornell, Fed. Cas. No. 5,280. 1 Blatchf. 506, a case which contradicts the plaintiffs' position here. The relevant language of that section was like that of section 4915: "Any such applicant * * * may have remedy by bill in equity."

Becker v. General Chain Co. (C. C. A. 1), 273 Fed. 419, followed Gay v. Cornell, supra, in a suit under section 4915. That was a bill by the assignee alone, without joining the inventor until after a year had passed. If he was a necessary party, this was too late, because, as I have said, the suit is a continuation of the proceedings to obtain a patent. It was held that the "applicant" of section 4915 was the party in interest, and the only party in interest was the assignee. This decision overrules anything to the contrary which may be gathered from Thoma v. Perri, supra, or Colman v. American, etc., Co., supra, and leaves as the plaintiff's only reliance Wende v. Horine, supra.

I have at the outset said why I think that decision is erroneous. The plaintiff has perhaps an honorific interest in the outcome, especially as he was criticized in the Court of Appeals of the District of Columbia. I do not deny that this is an interest which under some circumstances the law recognizes, but I do deny that any such circumstances exist here. This is a suit to get a patent, and the patent will not be the plaintiff's if he gets it. It will belong to a person who does not want to have it, and on whom the plaintiff will thrust it unwillingly. It will be got at the expense of those who have settled with the person to whom the plaintiff chose to give it. On what theory can the plaintiff bring about that result, because his honor is smirched, or his fame as an inventor abated? He should have thought of such possibilities before he put the invention out of his hands and accepted the quid pro quo. It is a case of damnum absque injuria.

Motion of the plaintiffs denied.

Motion of the defendants to amend granted.

Motion of the defendants to dismiss the bill granted.